UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

W3i Mobile, LLC,

    Plaintiff,

v.                                                             Civil No. 08-6370 (JNE/RLE)
                                                               ORDER

Westchester Fire Insurance
Company,

    Defendant.

---

Steven P. Zabel, Esq., Leonard Street and Deinard, PA, appeared for Plaintiff W3i Mobile, LLC.

Jeffrey M. Thompson, Esq., and Tony J. Kriesel, Esq., Meagher & Geer PLLP, appeared for Defendant Westchester Fire Insurance Company.

---

Plaintiff W3i Mobile, LLC (W3i) was insured by Defendant Westchester Fire Insurance Co. (Westchester) under a Business and Management Indemnity Policy (Policy) effective from January 1, 2008, until January 1, 2009. In this action, W3i asserts a claim for breach of contract and seeks a declaration that the Policy requires Westchester to defend and indemnify it for expenses related to two class action lawsuits brought against W3i in California and Minnesota in September 2008 (Underlying Claims).[1] The matter is before the Court on Westchester's Motion for Summary Judgment. For the reasons stated below, the Court grants Westchester's motion.

## I.    BACKGROUND

The Underlying Claims are materially similar. According to the complaints, W3i provides "mobile content," which includes "products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to the advanced (direct payment services, interactive radio and

---

[1]     Both actions were originally filed in state court and removed to federal court.

1

participatory television)." The mobile content industry consists of providers of mobile content, aggregators, and wireless carriers. Providers develop the mobile content and deliver it to customers through cellular telephone technology. Aggregators serve as intermediaries on behalf of several providers and negotiate commercial agreements to give the providers access to wireless carriers' billing and collection mechanisms. To bill a customer, a provider gives the aggregator the customer's phone number and the amount to be charged. The aggregator passes the information to the wireless carrier and the carrier includes the charge on its bill to the customer. Only the wireless carrier has a contractual relationship with the customer. Upon receiving payment, the wireless carrier keeps a percentage of the payment for the mobile content and gives the remainder to the aggregator. The aggregator does the same and remits the remaining funds to the provider. The complaints allege that W3i regularly caused customers to be charged for unauthorized mobile content. The Minnesota complaint asserts that W3i's billing practices violated Minnesota deceptive trade practices law. *See* Minn. Stat. §§ 325D.44, 325F.69 (2008). The California complaint asserts violations of the California Consumer Legal Remedies Act and California's Unfair Competition Law. *See* Cal. Civ. Code § 1770 (West 2008); Cal. Bus. & Prof. Code § 17200 (West 2008). Both complaints include claims for unjust enrichment and tortious interference with a contract.

On October 14, 2008, W3i tendered the Underlying Claims to Westchester for coverage. Westchester denied coverage in a letter dated November 1, 2008, indicating that coverage was excluded under the Policy. W3i brought this breach of contract and declaratory judgment action in December 2008. Westchester now moves for summary judgment.

## II. DISCUSSION

### A. Standard of review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Policy interpretation

The Policy contains a General Terms and Conditions section followed by three coverage sections: Employment Practices; Directors & Officers and Company (D&O and Company); and Fiduciary. Clauses A.1. and A.2. of the D&O and Company Coverage Section grant coverage for certain non-indemnified losses incurred by W3i's directors and officers and for W3i's indemnification of its directors and officers. Clause A.3. requires Westchester to "pay the **Loss** of [W3i] which [W3i] becomes legally obligated to pay by reason of a **Claim** first made against [W3i] during the **Policy Period** . . . and reported to [Westchester] for any **Wrongful Act** taking

place prior to the end of the **Policy Period**."[2] The D&O and Company Coverage Section also requires Westchester to defend W3i against "any **Claim**." In relevant part, a Claim is "a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." Westchester acknowledges that the Underlying Claims are Claims and that W3i timely reported those Claims. Westchester argues, however, that it has no duty to defend or indemnify W3i under the following three exclusions to the D&O and Employer Coverage Section:

    1.    Exclusions Applicable to All Insuring Clauses

        [Westchester] shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

. . . .

        q.    alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render professional services.[3]

. . . .

    2.    Exclusions Applicable Only to Insuring Clause A.3.

        [Westchester] shall not be liable for **Loss** on account of any **Claim**:

        a.    alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent [W3i] would have been liable in the absence of such contract or agreement; or

        b.    alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

---

[2]    Terms in bold are defined by the Policy.

[3]    This exclusion was added by an endorsement.

>                   . . .
>
>                   ii.    any goods or products manufactured, produced,
>                          processed, packaged, sold, marketed, distributed,
>                          advertised or developed by [W3i] (Products
>                          Exclusion).

"The duty to defend is broader than the duty to indemnify." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). An insurer generally must defend an insured against "'any claim [that] is arguably covered under a policy.'" *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008) (quoting *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn. 1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 918-19 (Minn. 2009)). To determine whether a claim is arguably covered, a court "compare[s] the allegations in the complaint of the underlying cause of action with the terms of the insurance policy." *Id.* (citing *Meadowbrook*, 559 N.W. 2d at 415). "If any claim is arguably covered under a policy, the insurer must defend and reserve any arguments regarding coverage." *SCSC Corp.*, 536 N.W.2d at 316.

General principles of contract interpretation apply to the construction of an insurance policy. *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 323 (Minn. Ct. App. 2008). Unambiguous language is given its plain and ordinary meaning. *Id.* Ambiguous language is construed in favor of the insured. *Id.* A court, however, "should be vigilant against finding ambiguity when none actually exists." *Id.* at 323-24. The insured bears the initial burden of establishing coverage under the policy but the insurer must establish the applicability of exclusions to coverage. *Id.* at 323. Exclusions are interpreted strictly against the insurer. *Id.*

Westchester first argues that coverage is excluded under the Products Exclusion because the allegations in the Underlying Claims arise out of the mobile content. Specifically, Westchester maintains that without the mobile content, there could be no unauthorized billing for

5

that content. W3i contends that the Underlying Claims do not arise out of the mobile content because they challenge only W3i's billing practices.[4]

Minnesota courts broadly construe the phrase "arising out of" in grants of coverage and exclusions in insurance policies. *See Murray*, 533 F.3d at 649-50. "The term 'arising out of' requires only a causal connection; it does not require proximate cause." *Ross v. City of Minneapolis*, 408 N.W.2d 910, 912 (Minn. Ct. App. 1987) (citing *Rausch v. Beech Aircraft Corp.*, 277 N.W.2d 645, 647 (Minn. 1979)). In other words, "the 'arising out of' language is satisfied if there is a causal connection between the [content] identified in the exclusion and the injuries for which compensation is being sought." *SECURA*, 755 N.W.2d at 327. A causal connection in this context means "'originating from,' 'growing out of,' or 'flowing from.'" *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 576 (Minn. 2009) (quoting *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741, 744 (Minn. 2005)).

Westchester's argument stretches the "arising out of" language too far. It is true that absent the mobile content there would have been no charges, and without charges, there would

---

[4] The Underlying Claims refer to mobile content as both products and services. (*See, e.g.*, Minn. Compl. ¶¶ 4 ("text message services, also known as 'mobile content,' include products that range from . . . ."), 25 (referring to mobile content as "products and services"); Cal. Compl. ¶¶ 6, 14.) W3i does not expressly argue that mobile content is a service rather than a product, but an affidavit submitted in support of W3i's opposition memorandum states that mobile content "includes services such as ringtones, quizzes, horoscopes, and weather alerts." In response to a request for admission pursuant to Rule 36 of the Federal Rules of Civil Procedure, however, W3i admitted that "mobile content was a product or products sold and marketed by W3i," so long as mobile content "is defined to mean ringtones, wallpapers and other subscription based services" that are the subject of the Underlying Claims. Moreover, in a letter to Westchester's counsel regarding a discovery dispute, W3i's counsel represented that "[t]here is no dispute that W3i's mobile content was a product sold and marketed by W3i." In light of W3i's admissions, the Court determines that mobile content is a product rather than a service. *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."); *Bender v. Xcel Energy, Inc.*, 507 F.3d 1161, 1168 (8th Cir. 2007) ("[A]s a general rule, admissions made in response to a Rule 36 request for admissions are binding on that party.").

have been no unauthorized charges. The Underlying Claims, however, could have omitted details about the mobile content and still alleged that W3i's billing for unauthorized charges violated the law. Thus, the Underlying Claims did not originate from, grow out of, or flow from the mobile content. Rather, the genesis of the Underlying Claims was W3i's alleged failure to procure proper authorization for the provision of mobile content before billing for that content.

Westchester argues that *Rausch* requires the opposite conclusion. In *Rausch*, a lessor leased a plane to an insured. 277 N.W.2d at 645. The plane crashed and several lawsuits were brought against the lessor. *Id.* The lease agreement required the insured to defend the lessor, but the insured refused. *Id.* After obtaining judgment against the insured, the lessor sought garnishment from the insurer. *Id.* The applicable insurance policy excluded coverage for "liability arising out of the ownership, maintenance, operation, use, loading, or unloading of aircraft owned by or chartered without crew by or on behalf of the named insured." *Id.* at 646. In determining that the exclusion applied, the court stated:

> Clearly the use of an airplane is a "but for" cause of [the insured's] liability. But it is more than that. It is the original activity out of which this entire matter arose. Far from incidental, it is fundamental to all that followed. It is true that the lease contract is also a but for cause of the liability. Yet every effect has many causes; there may be among those any number that are quite substantial and even of which it could be said that the effect "arose out of" such cause.

*Id.* at 647.

Unlike *Rausch*, where the plane crash gave rise to the original liability that was then borne by the insured pursuant to the lease agreement, the Underlying Claims in this case do not allege that the mobile content was faulty or otherwise gave rise to the alleged causes of action. Instead, the allegedly unauthorized billing for mobile content was "the original activity out of which [the Underlying Claims] arose." Accordingly, the "arising out of" language in the Products Exclusion does not preclude coverage.

7

Westchester further contends that the Underlying Claims are "attributable to, directly or indirectly resulting from, in consequence of, or in any way involving" the mobile content. The Court determines that the plain meaning of the latter phrase excludes coverage. Specifically, the Underlying Claims' allegations of unauthorized billing for mobile content "in any way involv[e]" that content. *See In re SRC Holding Corp.*, 545 F.3d 661, 668 (8th Cir. 2008) ("The word 'any' when read naturally has an expansive meaning." (citation and quotation marks omitted)); *Foster v. Summit Med. Sys., Inc.*, 610 N.W.2d 350, 3353-54 (Minn. Ct. App. 2000) (suggesting that "indirectly resulting from or in consequence of, or in any way involving" language is broader than "arising out of"); *The American Heritage College Dictionary* 730 (4th ed. 2007) (defining "involve" as to "contain as a part" or to "have as a necessary feature or consequence").

Such broad exclusionary language requires consideration of the illusory coverage doctrine, which provides "an independent means to avoid an unreasonable result when a literal reading of a policy unfairly denies coverage." *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995). The doctrine modifies the general rule requiring courts to enforce insurance contracts pursuant to their plain meaning by providing that "liability insurance contracts should, if possible, be construed so as not to be a delusion to the insured." *Id.* (quotation marks omitted). "[T]he doctrine is best applied 'where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent.'" *Kabanuk Diversified Inv., Inc. v. Credit Gen. Ins. Co.*, 553 N.W.2d 65, 73 (Minn. Ct. App. 1996) (quoting *Jostens*, 527 N.W.2d at 119).

Westchester indicates that the Policy covers types of liability beyond W3i's products, "such as wrongful employment practices, wrongful acts relating to employee benefit plans, and

8

general business-type torts that might be committed by directors and officers, such as libel, slander, trademark infringement, copyright violation, and misappropriation of trade secrets, to name a few." An exclusion in the same subsection as the Products Exclusion, however, expressly states that Westchester shall not be liable for loss incurred by W3i "on account of any Claim . . . in any way involving any actual or alleged infringement, misappropriation, or violation of copyright, patent, service marks, trademarks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services." Thus, the majority of the "business-type torts" identified by Westchester are seemingly excluded from the coverage granted to W3i by Clause A.3. of the D&O and Company Coverage Section. Moreover, wrongful employment practices are covered by the Employment Practices Coverage Section and coverage related to employee benefit plans is addressed in the Fiduciary Coverage Section. Nevertheless, W3i has not shown that it paid a specific premium for coverage under Clause A.3. or that coverage under other sections of the Policy is illusory. The absence of such showings precludes application of the illusory coverage doctrine. *See SRC Holding Corp.*, 545 F.3d at 671 (relying on existence of other coverage under policy and absence of evidence of premium allocation to find illusory coverage doctrine inapplicable); *Kabanuk*, 553 N.W.2d at 73 (finding illusory coverage doctrine inapplicable because no showing of any premium specifically allocated to cover certain claims); *Jostens*, 527 N.W.2d at 118 ("But Jostens cannot argue that it paid $90,000 for nothing—that is, for illusory discrimination coverage—because the policy was much more than a simple 'discrimination damages' policy. Rather, it afforded excess and umbrella coverage for a wide variety of damages other than those arising from discrimination."). Therefore, because the Underlying Claims in any way involve the mobile content, they are not covered by the Policy. Accordingly, Westchester has no duty to defend or indemnify W3i for

expenses associated with the Underlying Claims, and summary judgment in favor of Westchester is warranted.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Westchester's Motion for Summary Judgment [Docket No. 12] is GRANTED.

2. Westchester does not have a duty to defend or indemnify W3i in the Minnesota and California class actions.

3. W3i's breach of contract claim against Westchester is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 20, 2009

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge